In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00149-CR


______________________________




DANIEL TODD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 03-F-0446-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Daniel Todd was convicted of five counts of aggravated sexual assault. For each count, he
was assessed a sentence of life imprisonment and a fine of $10,000.00. 

 Todd alleges six points of error in his appeal. The first of these is the trial court's ruling
allowing one of the witnesses to testify as an "outcry witness" (see Tex. Code Crim. Proc. Ann.
art. 38.072 (Vernon 2005)). The second contends that the court permitted a witness to testify as to
the ultimate veracity of the child complainant. (1) The third was the action of the court in permitting
evidence of extraneous offenses committed by Todd. In the final three issues, Todd alleges that his
trial counsel's failure to object to the first three issues demonstrates that he had constitutionally
ineffective counsel. As we find that Todd failed to preserve error on his first three claims, and has
not demonstrated his trial counsel was ineffective, we affirm the trial court's judgment. 

Preservation of Error

 To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient
specificity, and (3) obtain an adverse ruling. Tex. R. App. P. 33.1; see Wilson v. State, 71 S.W.3d
346, 349 (Tex. Crim. App. 2002); Armstrong v. State, 718 S.W.2d 686, 699 (Tex. Crim. App. 1985)
(op. on reh'g) (objection must be timely and specific); Marini v. State, 593 S.W.2d 709 (Tex. Crim.
App. [Panel Op.] 1980). Finally, the point of error on appeal must correspond to the objection made
at trial. Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998) (op. on reh'g); Thomas v. State,
723 S.W.2d 696 (Tex. Crim. App. 1986).

 Todd failed to preserve error on any of the three substantive points of error he raises on
appeal. In separate points of error, he complains the trial court: 1) erred in allowing Kerol Wardlow,
a registered nurse and sexual assault nursing examiner (SANE), to testify as an outcry witness
without complying with the requirements of Article 38.072 of the Texas Code of Criminal
Procedure; 2) erred in allowing opinion testimony of lay and expert witnesses regarding the ultimate
truthfulness of the child complainant (bolstering); and 3) erred in allowing references to victims
other than the child complainant who was named in the indictment. 

 After careful review of the record of the trial proceedings, we find that Todd did not lodge
objections to any of the above-described testimony. The trial court conducted a pretrial hearing to
determine whether two of the State's witnesses could testify pursuant to Article 38.072. SANE
Wardlow later offered testimony that could be said to fall within the purview of Article 38.072, but
Todd did not object to this testimony. (2) Likewise, Todd offered no objection to the testimony of
therapist Barbara Gore, or Kristi Morrow, a family advocate at the Texarkana Children's Advocacy
Center. Todd complains that these witnesses offered their opinions regarding the ultimate
truthfulness of the child complainant. Nor did Todd object to witnesses using plural pronouns,
which could have been taken to suggest that there was another victim besides Ashley. In the absence
of objections timely lodged by Todd and with adverse rulings on these matters, there is no error
preserved for this Court to review. Accordingly, we overrule these points. 

Ineffective Assistance of Counsel

 Todd also complains that his trial attorney's failure to object to each of the above admissions
of evidence constituted distinct incidents of ineffective assistance of counsel. The standard for
establishing a violation of an accused's Sixth Amendment right to effective representation of counsel
is well documented. An appellant must show that (1) counsel's performance was so deficient that
he was not functioning as acceptable counsel under the Sixth Amendment, and (2) but for counsel's
error, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S.
668, 687-88 (1984); see also Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.]
1996, no pet.). There is a strong presumption that counsel's performance fell within the wide range
of reasonable professional assistance. Strickland, 466 U.S. at 690. To prevail on an ineffective
assistance of counsel claim, the appellant must overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy. Id. Assertions of
ineffective assistance of counsel must be firmly founded in the record. Bone v. State, 77 S.W.3d
828, 835 (Tex. Crim. App. 2002). In the absence of a record reference concerning counsel's
reasoning, we must generally presume that appellant's trial counsel had a plausible reason for his
actions. Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). 

 Testimony of Wardlow Admissible Under Rule 803(4)

 Regarding Todd's complaint about Wardlow providing outcry witness testimony without a
proper hearing by the trial court, it is helpful to review Wardlow's role in the case. She testified that,
in her role as a SANE, she interviewed the child as part of that examination; at trial, she related the
content of that interview. The statements of the child relating to the offense which were made in the
course of seeking medical diagnosis or treatment are exempted from the rule precluding hearsay
statements. Tex. R. Evid. 803(4); Wilder v. State, 111 S.W.3d 249, 256 (Tex. App.--Texarkana
2003, pet. ref'd) (statements made to licensed professional counselor); Gregory v. State, 56 S.W.3d
164, 182-83 (Tex. App.--Houston [14th Dist.] 2001, pet. dism'd) (statements made to nurse);
Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex. App.--Beaumont 2000, pet. ref'd) (statements to
clinical social worker); Torres v. State, 807 S.W.2d 884, 886-87 (Tex. App.--Corpus Christi 1991,
pet. ref'd) (statements to emergency room nurse). Failure to object to admissible evidence does not
constitute ineffective representation. Ex parte White, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

 Bolstering Testifying to Ultimate Truthfulness

 Todd asserts that his trial counsel was ineffective for failing to object to the testimony of
therapist Gore and Morrow with the Texarkana Children's Advocacy Center. On appeal, Todd
alleges that the State's witnesses were allowed to 1) proffer testimony which bolstered other State
witnesses, and 2) offer opinions as to the ultimate truthfulness of child complainant Ashley. Gore,
under cross-examination from Todd's trial attorney, said, "generally speaking, . . . when children
outcry, they are telling the truth," and, "[c]hildren don't tend to lie about sexual abuse." Morrow, in
discussing her interview with the child complainant, on redirect examination by the State, testified
that, in her experience and opinion, "as a whole children don't lie."

 "It is generally improper for a witness to offer a direct opinion as to the truthfulness of
another witness and such opinion is therefore inadmissible evidence." Blackwell v. State, 193
S.W.3d 1, 21 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd) (citing Schutz v. State, 957 S.W.2d
52, 59 (Tex. Crim. App. 1997) (holding testimony that complainant did not exhibit evidence of
fantasizing, that manipulation was less likely explanation for complainant's allegations, and that
complainant's allegations were not result of fantasy constituted direct comments on truth of
allegations)). (3) This type of testimony is inadmissible "because it does more than 'assist the trier of
fact to understand the evidence or to determine a fact in issue'; it decides an issue for the jury." 
Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). This rule applies to expert and lay
witness testimony alike. Fisher v. State, 121 S.W.3d 38, 41 (Tex. App.--San Antonio 2003, pet.
ref'd); Arzaga v. State, 86 S.W.3d 767, 776 (Tex. App.--El Paso 2002, no pet.).

 However, the circumstances of this case are significantly different from those in Schutz. In
that case, the expert testimony which became the subject of appellate complaint was elicited by the
State on direct examination. Here, the statements of which Todd now complains were answers to
questions of his counsel during cross-examination of State witnesses or elicited by the State on
redirect examination after Todd's counsel had questioned the witnesses about their opinions as to the
child's truthfulness. 

 In the case of Gore's testimony, trial counsel was questioning her about "projection or
transference," wherein an adult would influence a child's feelings about a person to coincide with
the projecting adult's feelings. When Todd's attorney asked if Gore had "ever noted . . . or had a case
where [the projection or transference] produced itself in a child basically spinning a yarn about
what's happening to them, either in their home or at play," Gore answered, "Children don't tend to
lie about sexual abuse." She went on to explain that children may feel they are risking their home
life and caregivers by alleging sexual abuse; because of this, the interviewers take such allegations
seriously. Responding to questions from counsel as to whether it was possible that a child might
purposefully misidentify an abuser, Gore said that, although it was hypothetically possible, she had
never had personal knowledge of such a case. In her answer, she stated, "But generally speaking, . . .
when children outcry, they are telling the truth." 

 Morrow, also on cross-examination by Todd's trial attorney, was explaining how she
establishes the difference between telling the truth and lying with young children. She discussed
establishing what she called an oath with these children, and said, "so based on that, I believe
everything that she tells me is the truth to her recollection." Todd's counsel attempted to discredit
Morrow's opinions and testimony by asking if her evaluation would change if she knew that the child
had been away from home for a week where her Aunt Joyce Ward had access to converse with
Ashley. On redirect examination, the State asked:

 Q Since [defense counsel] asked you about the truthfulness of [Ashley],
and he said you thought this person was only truthful because they took that oath, is
that actually correct? 

 

 A [Morrow] I - - no. I mean, as a whole, children have to work hard to
lie. I mean, children really only know what is reality for them, so to make things up
is really hard for them. So as a whole, children don't lie. 

 Bolstering occurs when one party introduces evidence for the purpose of adding credence or
weight to earlier unimpeached evidence offered by that same party. Rousseau v. State, 855 S.W.2d
666, 681 (Tex. Crim. App. 1993). Here, the testimony of Gore and Morrow was offered by the State;
it was Todd who sought to impeach their credibility. Thus, although it was the State's witnesses who
offered the testimony that Todd complains had the effect of bolstering, strictly speaking it was not
bolstering, as the witnesses made these comments only after Todd's attempted impeachment. 

 Also, we examine these pieces of testimony in context, that is, in response to cross-examination questioning by Todd's trial counsel. We are not examining whether the testimony was
properly admitted; rather, we examine the testimony in light of Todd's appellate complaint that his
trial counsel was constitutionally ineffective for allowing the statements or in "opening the door" for
such answers to be given. We are required to presume that counsel's course of action fell within the
range of reasonable professional assistance. Strickland, 466 U.S. at 690. In most circumstances, in
the absence of a record concerning the rationale for counsel's actions, we must generally presume
that counsel had a plausible reason for taking the actions which he pursued. Thompson, 9 S.W.3d
at 814. Through his cross-examination (Todd called no witnesses), he questioned several witnesses
as to why others in the house did not hear the complainant cry out in pain and he asserted that the
complainant would have cried out if the abuse had occurred as she described it. In his opening
statement, counsel suggested that the child either fabricated the allegations against Todd, or
transferred the act from another perpetrator to Todd "so that a residence could be changed." He
pointed out Ashley's recantation of her allegations, and contrasted that with her trial testimony
accusing Todd. He also raised the suggestion that Ashley had been coached to make the allegations. 
All of these would point to strategic defenses in counsel's questioning of State witnesses and in his
closing argument. 

 The record is utterly silent as to trial counsel's strategy. In Blackwell, the State's witnesses
testified, without objection, as to why they found the child complainant to be believable. Finding
"no direct evidence in the record" explaining why trial counsel did not object, the Texas Court of
Criminal Appeals "presume[d] that counsel had a plausible reason for his actions." Blackwell, 193
S.W.3d at 22.

 Todd cannot overcome the first Strickland requirement showing that his trial counsel was
deficient. (4) A defendant's failure to satisfy one prong of the two-part test for ineffective assistance
of counsel negates a court's need to consider the other. Strickland, 466 U.S. at 697. We overrule
this contention of error. 

 Use of Plural Pronouns and Suggestion of Extraneous Offenses

 Todd also complains that his trial counsel was ineffective because counsel did not object to
witnesses' use of plural pronouns. Todd also contends his trial counsel was ineffective because trial
counsel himself used plural pronouns, suggesting to the jury that Todd had perpetrated similar
offenses on other victims.

 There is evidence in the record that Todd engaged in inappropriate touching and felonious
conduct with Ashley's sister, who is a year younger than Ashley. At the beginning of the
guilt/innocence phase of the trial, with Ashley's Aunt Joyce testifying, the State asked to speak to
Joyce outside the jury's presence; at the bench, one of the prosecutors said, "I think we were just
concerned that she was going to start talking about [Ashley's sister] as a victim." The sister testified
at punishment that Todd had put his "private part" inside her "back" private, which "hurt really bad,"
and made her "put his private part" in her mouth while he was "looking at porn on the computer." 

 The subject of Todd's appellate complaint is that some witnesses, and trial counsel, used
plural pronouns during trial. For example, when cross-examining Ashley's aunt, Joyce Ward, about
why Ward kept Ashley and her sister in Ward's home after Ashley first told Ward of Todd's abuse,
and why Ward waited a week to take Ashley and her sister to speak to authorities, Ward responded,
"Because if those children were not ready to tell a stranger what happened to them, it would have
done me no good to go to the police." Todd's trial attorney uses "they" and "them" throughout this
examination, referring to Ashley and her sister. Therapist Gore answered one of Todd's attorney's
questions, in part, "They did not [misidentify the abuser] in this case . . . .  They were very firm about
who did the abuse and how it occurred." There are several more instances where witnesses and
Todd's attorney used plural pronouns, suggesting another child besides Ashley was subjected to
Todd's abuse. 

 Again, we point to the evidence in the record that trial counsel may have pursued a
discernible strategy: that Todd "didn't do it, couldn't have possibly done it, and if it were done, it has
been transferred upon him for a specific purpose, so that a residence could be changed." The burden
of showing ineffective counsel is a heavy one. In evaluating counsel's performance at trial, we are
to "commonly assume a strategic motive if any can be imagined and find counsel's performance
deficient only if the conduct was so outrageous that no competent attorney would have engaged in
it." Andrews v. State, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005); Bone v. State, 77 S.W.3d
828, 833 n.13 (Tex. Crim. App. 2002) (citing Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001). Being able to perceive something of a plausible strategy by trial counsel, we are unable to
say that Todd has demonstrated that his counsel's performance was deficient. Accordingly, we
overrule this point of error. 

 We affirm the trial court's judgment. 



 Bailey C. Moseley

 Justice


Date Submitted: August 1, 2006

Date Decided: January 23, 2007


Do Not Publish

1. The indictment supplied a pseudonym, "Ashley Johnson," for the child complainant; the
parties continued the use of the pseudonym in their briefs. We will continue this practice herein. 
2. Wardlow's testimony was admissible under Texas Rule of Evidence 803(4), as we discuss
below. See Tex. R. Evid. 803(4). 
3. However, an expert's testimony that a child did not exhibit the traits of manipulation is not
a direct comment on the truth of the child's allegations and thus is admissible. Schutz, 957 S.W.3d
at 73. It has also been held that a trial court may admit, as substantive evidence under Rule 702,
expert testimony that a child exhibits behavioral characteristics that have been empirically shown
to be common among children who have been abused. Perez v. State, 113 S.W.3d 819, 832 (Tex.
App.--Austin 2003, pet. ref'd); Hitt v. State, 53 S.W.3d 697, 707 (Tex. App.--Austin 2001, pet.
ref'd).
4. We also point out that this "record on direct appeal is undeveloped and cannot adequately
reflect the motives behind trial counsel's actions." Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim.
App. 2001).